IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  05-cv-01469-MSK-KLM

ARMEN SAROYAN,

      Plaintiff(s),

v.

COLORADO ATTORNEY GENERAL, and
JOSEPH ORTIZ,

      Defendant(s).
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

Before the Court is an **Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [Docket No. 7; Filed October 20, 2005] filed by Armen Saroyan ("Applicant").  Respondents filed an Answer Brief objecting to the Application on January 25, 2006 [Docket No. 13-1].  Applicant filed a Traverse to Answer on March 3, 2006 [Docket 18], which also included what Applicant describes as "newly surfaces [sic] legal or factual theories."  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L. Civ. R. 72.1C, the Application has been referred to this Court for recommendation.  The matter has been fully briefed and is ripe for resolution.   The Court has considered the relevant pleadings, the state court record, and the applicable case law, and is sufficiently advised in the premises.  For reasons set forth below, the Court recommends that the Application be **DENIED**.

I.  Background

Applicant challenges his state court conviction for one count of second degree

kidnapping (with sexual assault), first degree sexual assault, first degree burglary, and violation of a restraining order. In June 2001, Applicant was convicted as charged by a jury in the Arapahoe County District Court, Colorado and sentenced to two concurrent ten year sentences for kidnapping and sexual assault, and one consecutive sentence of five years for burglary. *Application* [#7] at 2. Applicant is currently in the custody of the Colorado Department of Corrections at the Kit Carson Correctional Facility in Burlington, Colorado.

The facts giving rise to Applicant's conviction are the following. In June 2000, Applicant and his wife were living separately, and Applicant's wife obtained a temporary restraining order which prohibited Applicant from coming within 150 yards of her. *Answer Brief* [#13-1] at 2; *Record* vol. VII at 94, 172-78. After Applicant's wife filed for legal separation, she received a second temporary restraining order which prohibited Applicant from entering the family residence or coming within 100 yards of her. *Answer Brief* [#13-1] at 2-3; *Record* vol. VII at 173, 178-79. Applicant and his wife had two children together. *Record* vol. VII at 170. In addition, Applicant's wife had a child from a previous relationship. *Id.* at 171. Applicant was permitted to see all three children via exchanges conducted at the local police station. *Answer Brief* [#13-1] at 3; *Record* vol. VII at 177-78.

The day after Applicant received notice of the second temporary restraining order, Applicant unlawfully entered the home of his wife while she was preparing breakfast for their three children. *Record* vol. VII at 187-88. He refused to leave and physically forced her into the bedroom. *Id.* at 165, 190-92. While he was dragging her down the hall with her hands behind her back, he threatened to kill her if she did not meet his demands. *Id.* at 69, 211. Applicant then threw his wife forward on the bed and raped her. *Id.* at 193-95. There was evidence presented at trial that at least one their younger children was also in

the bedroom when Applicant began raping his wife.  *Id.* at 216-20, 186, 191.  The oldest child, who was ten years old, heard his mother scream from the bedroom and called 911.  *Id.* at 69-75, 136-40.  He informed the dispatcher that Applicant was inside the house in violation of the restraining order, but the phone cord was disconnected from the wall before he could finish.  The dispatcher called back, and Applicant's wife struggled away from Applicant and answered the phone from the bedroom.  *Id.* at 203, 227-30.  As she was informing the dispatcher that Applicant had raped her, Applicant left.  *Id.* at 203.

Applicant appealed his conviction on the grounds that he was denied his right to a speedy trial, that he was improperly convicted of violating the restraining order, that the definition for the element of "seize and carry" in the kidnapping jury instruction was erroneous, that the jury should have been instructed to consider the lesser included offense of false imprisonment, that his interpreter was unqualified,[1] that his request for mistrial due to prosecutorial misconduct was erroneously denied, and that the cumulative errors required a new trial. *Brief of Appellant* at v, *People of Colorado v. Saroyan*, No. 01CA2017 (*Saroyan I*) (filed Jan. 23, 2003).  The Colorado Court of Appeals rejected every challenge and upheld Applicant's conviction.  *Saroyan I*, No. 01CA2017 at 24 (Colo. Ct. App. Dec. 11, 2003) (unpublished decision).  Applicant appealed the Colorado Court of Appeals' decision, but asserted only two grounds – that he was denied the right to a speedy trial and that the "seize and carry" definition was in violation of state law. *Brief of Petitioner* at 1, *Saroyan v. People of Colorado*, No. 04SC41) (*Saroyan II*).  The Colorado Supreme Court declined to exercise jurisdiction and denied Applicant's petition for writ of certiorari.  *Saroyan II*, No.

---

[1] Applicant immigrated to the United States from Armenia in 1992.  *Answer Brief* [#13-1] at 2.

04SC41 (Colo. May 3, 2004) (unpublished decision).

Applicant also pursued postconviction relief. *Answer Brief* [#13-1] at 5. Applicant filed a motion for postconviction relief pursuant to Colo. R. Crim. P. 35(c) arguing that his conviction should be overturned due to the ineffective assistance of his trial counsel in several areas, none of which are relevant here. *Motion to Quash Conviction* at 4-6, 00CR1601 (filed Dec. 1, 2004). The motion was denied on March 22, 2005. *Answer Brief* [#13-1] at 5. Applicant filed a second motion for postconviction relief regarding the length of his sentence. *Motion for Reconsideration of Sentence*, 00CR1601 (filed April 12, 2005). The motion was denied on April 13, 2005. There is no record that Applicant appealed either decision related to his postconviction motions. *Answer Brief* [#13-1] at 5-6 & n.3.

On October 20, 2005, Applicant filed the current action. The Application raises four claims.

Claim I     The definition given for the "seize and carry" element of the kidnapping jury instruction was in violation of Applicant's Fourteenth Amendment right to due process. *Application* [#17] at 12.

Claim II     Applicant was erroneously denied an instruction on false imprisonment as a lesser-included offense to kidnapping in violation of Applicant's Fourteenth Amendment right to due process. *Id.* at 15

Claim III     The prosecutor committed misconduct during her closing argument and a mistrial should have been granted such that Applicant was denied the protections of his right to due process pursuant to the Fourteenth Amendment. *Id.* at 18.

Claim IV     The cumulative impact of errors committed at the trial denied

4

Applicant his Fourteenth Amendment right to due process. *Id.* at 22.

## II.  Analysis

### A.  Applicant's Status

Applicant is proceeding *pro se.*  Therefore, the Court must construe his Application liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural defects caused by Applicant's *pro se* status.  *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993).  However, the Court is not the nonmoving party's advocate and must nevertheless deny an application that is based on vague or conclusory allegations.  *Hall*, 935 F.3d at 1110.

### B.  Standard of Review

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court, or (2) involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court." *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).  A decision is contrary to clearly established federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent. *Williams*, 529 U.S. at 406.  A decision involves an unreasonable application when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue.  *Id.* at 409.  However, the Court "may not issue the writ simply because [it concludes] in [its] independent judgment that the state court applied the law erroneously or incorrectly.  Rather, [the Court] must be

5

convinced that the application was also 'objectively unreasonable.'" *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

In addition, pursuant to this Court's habeas review, a presumption of correctness exists regarding trial and appellate court findings of fact. *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982). As such, Applicant bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

C.      Exhaustion of Claims

As a threshold matter, Respondents argue that Applicant failed to adequately exhaust any of the claims asserted in his Application. *Answer Brief* [#13-1] at 15. As to Claim I, Applicant challenged the jury instruction given for kidnapping both before the Colorado Court of Appeals and the Colorado Supreme Court. However, he did not allege the deprivation of any federal constitutional right. *Id.* at 22. As to Claims II through IV, Applicant pursued derivations of these issues before the Colorado Court of Appeals, but when he appealed the adverse decision to the Colorado Supreme Court, he failed to raise these claims. *Id.* at 25, 27, 33. As such, Respondents argue that Applicant is barred from pursuing any of his claims herein.

"The exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). The state and federal courts have concurrent power to "guard and protect rights secured by the Constitution." *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (citation omitted). As such, "it would be unseemly in our dual

system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Darr v. Burford*, 339 U.S. 200, 204 (1950), *overruled on other grounds by Fay v. Noia*, 372 U.S. 391 (1963).

Applicant denies that his claims are procedurally defaulted. He notes that the exhaustion "rule in question was not firmly established and regularly followed at the time [Applicant] allegedly defaulted here, nor has [sic] Respondents carried its [sic] burden of pleading and proving such a procedural default in this Court." *Traverse* [#18] at 3. Contrary to Applicant's conclusory and unsupported allegation, the duty to exhaust was well settled at the time of Applicant's state court appeals. The law was and is clearly established that "a state court prisoner may initiate a federal habeas petition '*only* if the state courts have had the first opportunity to hear the claim sought to be vindicated.'" *Vasquez*, 474 U.S. at 257 (emphasis added) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)).

In regard to Claim I, interpreting Applicant's alternative assertion liberally, i.e., that Respondents failed to prove that Applicant did not exhaust, the Court construes his argument to be that it was enough for him to raise the "seize and carry" jury instruction issue to some degree at the state court level. In other words, Applicant appears to assert that he was not also required to raise the issue of a violation of a federal right in order to exhaust and pursue such a violation with the federal court. I disagree. "If a habeas [applicant] wishes to claim that [a] ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *See Duncan v. Henry*, 513 U.S. 364, 366 (1995). I find that Applicant did not fully afford the state courts an opportunity to pass judgment on whether the

kidnapping jury instruction regarding the definition of "seize and carry" asserted in Claim I violated his federal constitutional rights. *See Brief of Appellant* at v, 15-22, *Saroyan I*; *Brief of Petitioner* at 1, 9-12, *Saroyan II*. Accordingly, Applicant's failure to exhaust Claim I necessitates its denial.[2]

Respondents also argue that Applicant failed to exhaust Claims II through IV. Answer Brief [#13-1] at 25, 27, 33. Claims II through IV assert challenges regarding the failure of the state trial court to instruct on the lesser included offense of false imprisonment, prosecutorial misconduct, and cumulative error. While his appeal to the Colorado Court of Appeals included derivations of all of the claims asserted herein, Applicant did not assert constitutional challenges related to these claims. *See Brief of Appellant* at v, 22-24, 26-29, *Saroyan I*. Moreover, Applicant did not fully pursue Claims II through IV in the state appellate system. His appeal to the Colorado Supreme Court was limited to whether the "seize and carry" definition was in violation of state law and another issue not relevant here. *See Brief of Petitioner* at 1, *Saroyan II*. Applicant does not dispute Respondents' contention that Claims II through IV were not asserted in his appeal to the Colorado Supreme Court. *See Traverse* [#18] at 4. Rather, as noted earlier, he asks the Court to forgive any lack of exhaustion because his appellate counsel was ineffective due

_____

[2] Alternatively, in his Traverse, Applicant suggests that he should be allowed to assert an ineffective assistance claim against his *appellate* counsel for her failure to bring this constitutional challenge. *Traverse* [#18] at 3-4. He did not raise a claim regarding the issue of his appellate counsel's assistance in his Application and did not exhaust it at the state court level. Applicant's Rule 35(c) motion for postconviction relief was limited to whether his *trial* counsel was ineffective. In addition, to the extent that the Traverse can be interpreted to assert a claim of ineffective assistance of postconviction counsel, this claim is denied summarily. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

to her failure to adequately raise these arguments.  *Id.* 3-4.  Construing Applicant's Traverse liberally, the Court interprets his argument to be that his counsel's ineffective assistance should be treated as the "absence of available State corrective process" pursuant to 28 U.S.C. § 2254(b)(1)(B), such that his failure to exhaust should be excused.

While appellate counsel's ineffective assistance can constitute "cause" sufficient to excuse a state prisoner's failure to exhaust, that allegation must first be presented to the state courts as an independent claim prior to Applicant asserting it here.  *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986).

> The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court "to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," and that holds true whether an ineffective assistance claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief.

*Id.* at 489 (quoting *Burford*, 339 U.S. at 204); *see also Hume v. McKune*, 176 F. Supp. 2d 1134, 1142 (D. Kan. 2001) (holding that "before 'ineffective assistance of counsel ' may be advanced as cause for the procedural default of another claim, counsel's ineffectiveness must have been presented to the state courts in accordance with state law" (citation omitted)).  Accordingly, Applicant's failure to exhaust Claims II through IV necessitates their denial.

D.     Merits of Each Claim

As noted above, the Court concludes that Applicant's claims should be denied for his failure to exhaust them at the state court level.  However, out of an abundance of caution given Applicant's *pro se* status, the Court addresses the legal merits of each claim.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on

the merits, notwithstanding the failure of the applicant to exhaust . . . .").

### 1. Claim I: Definition of "Seize and Carry"

Applicant argues that the jury was given an erroneous definition on the "seize and carry" element of kidnapping, in violation of state law set forth in *People v. Ridenour*, 878 P.2d 23, 25 (Colo. Ct. App. 1994).[3]   Consequently, he contends his conviction for kidnapping was violated his Fourteenth Amendment right to due process because the jury instruction relieved the state of its burden of proof for an element of the offense. *Application* [#7] at 12.   *Ridenour* upheld an instruction for kidnapping which defined the element "seize and carry" as "any movement, however short in distance, that results in a substantial increase in harm to the victim." *Ridenour*, 878 P.2d at 25.  The instruction given at Applicant's trial did not contain the qualification regarding movement that results in a substantial increase in harm to the victim.  Rather, the jury was instructed that "seize and carry" meant "any movement of that person, however slight." *Jury Instruction* 14 at 172. Applicant argues that this was error.

As a preliminary matter, the trial court's jury instruction for the state law offense of second degree kidnapping does not involve the potential violation of a federal law. However, a violation of state law can amount to a deprivation of due process pursuant to *Hicks v. Oklahoma*, 447 U.S. 343 (1980).  "[I]n order to benefit from the rule in *Hicks*, a habeas petitioner must show that the alleged failure to apply state law was 'arbitrary in the constitutional sense.'" *Dickson v. Franklin*, 130 Fed. Appx. 259, 264 (10th Cir. Apr. 27, 2005) (unpublished decision) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1180 (10th Cir.

---

[3] Pursuant to Colo. Rev. Stat. § 18-3-302(1):  "Any person who knowingly seizes and carries any person from one place to another, without his consent and without lawful justification, commits second degree kidnapping."

1999)).  Moreover, "the deprivation occasioned by the state's failure to follow its own law

. . . must shock the judicial conscience."  *Aycox*, 196 F.3d at 1180.

Considering whether the jury instruction was in violation of state law, as

Respondents correctly note, *Ridenour* was overruled by the Colorado Supreme Court, and

the "substantial increase in harm to victim" portion of the kidnapping instruction was

specifically abandoned.  *People v. Harlan*, 8 P.3d 448, 476 (Colo. 2000).  The Colorado

Supreme Court held:

> We do not accept the defendant's proposition that substantially
> increasing a risk of harm to the victim is part of the asportation element of
> second degree kidnapping.  The ["seize and carry"] element is simply that a
> person seized and carried another person from one place to another.  That
> the defendant's conduct substantially increased a risk of harm to the victim
> is not a material element of second degree kidnapping.  It is instead a factual
> circumstance reviewing courts consider in some cases to determine whether
> there is sufficient evidence to prove that the defendant moved the victim from
> one place to another.  Therefore, the trial court correctly instructed the jury
> as to the elements of second degree kidnapping

*Id.*

Applicant also contends that the use of the phrase "however slight" in the "seize and

carry" definition does not appropriately define the asportation element of second degree

kidnapping.  *Application* [#7] at 14.  Considering that the trial court in *Harlan* did not appear

define "seize and carry," but rather recited "essentially identical terms [found in the statute]

concerning the elements of second degree kidnapping," the Court is not persuaded that the

use of the phrase "however slight" to define "seize and carry" is contrary to state law.  *See*

*Harlan*, 8 P.3d at 476 n.18.  Further, given that the *Harlan* court defined "seize and carry"

as simply "that the defendant moved the victim from one place to another" and refused to

qualify this movement with further proof that the movement was "substantial" or "incidental,"

the use of the phrase "however slight" is not contrary to that holding. *Id.* at 477. In addition, the Colorado Supreme Court has noted that "[t]he movement of the victim necessary to sustain a second degree kidnaping conviction need not be substantial" and can be satisfied by movement that is merely a short distance. *Apodaca v. People*, 712 P.2d 467, 475 (Colo. 1985) (holding that the qualification of the movement, "which requires that the movement must be more than incidental . . .[,] applies only to first degree kidnapping").

In *Saroyan I*, the Colorado Court of Appeals addressed whether the definition of "seize and carry" given at Applicant's trial was sufficient. *Saroyan I*, No. 01CA2107, at 14-15. The court held that the instruction satisfied the requirements of state law, particularly considering the Colorado Supreme Court's decision in *Harlan*. *Id.* at 15. Upon this Court's review of the record and of the applicable state law, the Court finds that the trial court's definition of "seize and carry" satisfied state law. Applicant's assertion that the Court should have instructed the jury differently has no merit. Even if the Colorado Court of Appeals' holding was based on an erroneous interpretation of state law, Applicant has presented no evidence that the trial court's alleged deviation from state law shocks the judicial conscience or violated some constitutional right. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Further, there does not appear to be any federal precedent interpreting the State of Colorado's "seize and carry" definition in a second degree kidnapping instruction, therefore the Colorado Court of Appeals' holding cannot be said to contradict federal law.

To summarize, the Colorado Court of Appeals' decision was not contrary to state or federal law nor does it shock the judicial conscience. As such, the Court recommends that

Applicant's Claim I be denied because (1) Applicant failed to exhaust it by raising a federal constitutional challenge at the state court level; and (2) after reviewing the claim on its merits, Applicant has failed to prove that he suffered a constitutional injury.

2. Claim II: Lesser Included Offenses Instruction

Applicant contends the trial court's refusal to instruct the jury on the lesser included offense of false imprisonment was error and amounted to a denial of due process. *Application* [#7] at 15. Applicant cites *Beck v. Alabama*, 447 U.S. 625 (1980) to support his contention that the failure to instruct a lesser included offense amounts to a constitutional violation. However, *Beck* was limited to capital cases, and the Court specifically declined to address whether the failure to instruct a lesser included offense in a noncapital case amounted to a due process violation. *Id.* at 638 n.14. The Tenth Circuit has addressed this issue and established a "rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (quoting *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988)).

Even if this Court were obligated to consider whether the failure to give the jury an instruction for false imprisonment amounted to a due process violation pursuant to *Hicks*, both the state trial court and the Colorado Court of Appeals determined that there was insufficient evidence to instruct the jury on false imprisonment. *Saroyan I*, No. 01CA2017, at 15-16. Such factual determinations are presumed to be correct for our purposes and can only be rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Applicant fails to set forth clear and convincing evidence that a false imprisonment instruction should have been given. His primary assertion is that because

13

the jury asked for a more specific definition of the "seize and carry" element of kidnapping during their deliberations, he was entitled to a jury instruction for the offense of false imprisonment. *Application* [#7] at 17; *Record* vol. IX at 137-43. Applicant also argues that the Colorado Court Appeals failed to construe the evidence presented at trial in the light most favorable to him. Applicant offers no legal or factual support for this secondary argument, and the Court declines to consider it.

The Colorado Court of Appeals noted that pursuant to state law, a defendant is only entitled to an instruction on a lesser included offense "when there is a rational basis to acquit of the offense charged but convict on the included offense." *Saroyan I*, No. 01CA2017, at 15 (citing *People v. Ramirez*, 18 P.3d 822, 827 (Colo. Ct. App. 2000)). It is not enough to suggest there is a "mere chance" the jury may reject testimony put into evidence. *Ramirez*, 18 P.3d at 827; *see Apodaca*, 712 P.2d at 474-75. Pursuant to Colo. Rev. Stat. § 18-3-302(1), second degree kidnapping is the crime of unlawfully seizing and carrying a person from one place to another without his or her consent.[4] Considering the evidence presented at trial, namely that Applicant forcibly pushed his wife down the hall to the bedroom without her consent while threatening to kill her, *Record* vol. VII at 69, 76-77, 118, 123-26, 165-66, 190-92, 227, it was not error to conclude that there was no rational basis for the jury to acquit Applicant of the charge of kidnapping.

In summary, the Colorado Court of Appeals held, and I agree, that the failure to instruct the jury on the lesser included offense was not a violation of state or federal law. Nor has Applicant shown that the trial court or Colorado Court of Appeals' decision shocks

---

[4] Pursuant to Colo. Rev. Stat. § 18-3-303(1), false imprisonment is the act of "knowingly confin[ing] or detain[ing] another without the other's consent and without proper legal authority."

the judicial conscience.  As such, the Court recommends that Applicant's Claim II be denied because (1) Applicant failed to exhaust it by raising a federal constitutional challenge or raising it to every state appellate court; and (2) after reviewing the claim on its  merits, Applicant has failed to prove that he suffered a constitutional injury.

### 3. Claim III:  Prosecutorial Misconduct

Applicant argues that two remarks made by the prosecutor during her closing statement were prejudicial to such an extent that a mistrial should have been declared.  Applicant contends that the trial court's failure to declare a mistrial deprived him of due process.  *Application* [#7] at 18.  During her closing, the prosecutor commented:

> But the other thing of it is, frankly, it doesn't make any difference whether those children were in the bedroom or not.  From a personal standpoint and from a moral standpoint, it's disgusting and it's ridiculous . . . . [Interrupted by objection].

*Record* vol. IX at 118-19.  Plaintiff also takes issue with a second remark made by the prosecutor during her closing, where she noted:

> The process server had a discussion with him in English.  His youngest children don't even, apparently, really speak Armenian.  They understand it.

> But he's been here long enough to speak English and he's been here long enough to know that you don't do something like this in our country.

*Id.* at 123.

As to the prosecutor's first comment, Applicant contends that the "prosecutor's statement concerning this evidence misrepresented the nature of the evidence by arguing that it did not matter as an element of the crimes alleged, and further inflamed the jury's passions and biases by suggesting that the dispute as to the accuracy of the alleged victim's testimony was personally and 'morally disgusting and [. . .] ridiculous.'"

15

*Application* [#7] at 20. The Court interprets Applicant's argument as follows: (1) that the prosecutor misrepresented the evidence regarding whether one of the children was in the bedroom; and (2) that the comment, which alluded to the prosecutor's personal beliefs, was improper. As a preliminary matter, the defense immediately objected to this statement, and it was sustained. *Record* vol. IX at 119. Thereafter, the Court also gave a curative instruction to the jury. *Id.* at 127.

Taking each contention separately, the Court rejects Applicant's allegation that the prosecutor misrepresented the facts presented at trial. The Court understands the prosecutor's comment to recognize that there was disputed testimony regarding whether one of Applicant's children was in the bedroom at the time Applicant was sexually assaulting his wife. Regardless, the Court notes that the presence or absence of one of the children does not go to one of the elements of second degree kidnapping. *See* Colo. Rev. Stat. § 18-3-302(1).

As to the prosecutor interjecting her personal belief, the propriety of this comment must be taken in context of the entire closing statement and indeed, the entire trial. *Smallwood v. Gibson*, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

> To view the prosecutor's statements in context, we look first at the strength of the evidence against defendant and decide whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." . . . We also ascertain whether the curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements . . . . Ultimately, we "must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."

*Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) (citation omitted). "Generally, a prosecutor's improper remarks require reversal of a state conviction only if the remarks 'so

16

infested the trial with unfairness as to make the resulting conviction a denial of due process.'" *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (quoting *Donnell v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "Prosecutorial misconduct does not warrant federal habeas relief unless the conduct complained of is so egregious as to render the entire proceedings against the defendant fundamentally unfair." *Smallwood*, 191 F.3d at 1275.

The Colorado Court of Appeals found that the prosecutor's comment about her opinion of Applicant's conduct, taken in isolation and considering the overwhelming evidence of Applicant's guilt present in the record, could not and did not attribute to an unwarranted finding of guilt or unnecessarily prejudice the jury. *Sayoran I*, No. 01CA2017, at 21. I agree. Applicant has failed to assert conduct that rendered the entire trial fundamentally unfair. Moreover, I find that any prejudice that could have resulted from this comment was sufficiently minimized by the curative instruction. *Record* vol. IX at 127; *see Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998).

As to the prosecutor's second statement, Applicant contends that the comment regarding his ability to speak English "implicated [his] right to an interpreter during the trial, and sought biased [sic] the jury towards [Applicant] based on his ethnicity." *Application* [#7] at 20. As a preliminary matter, Applicant's objection to this comment was sustained and the jury was immediately told to disregard it. *Record* vol. IX at 123. Thereafter, a curative instruction was also given to the jury. *Id.* at 127.

The Colorado Court of Appeals held that the prosecutor's statement that Applicant could speak English was a "fair comment on the evidence," and it was relevant to whether Applicant understood the terms and conditions of the restraining order. *Saroyan I*, No.

01CA2017, at 21.  The Colorado Court of Appeals noted that the statement generally also "followed the prosecutor's argument that defendant did not respect others' rights even when protected by the law."  *Id.* at 22.  The Court did not find that the statement inappropriately commented on Applicant's ethnicity or put his ethnicity on trial.  Moreover, weighing the comment in relation to the entire trial and the overwhelming evidence of guilt, the court noted that the prosecutor's comment was not so pervasive as to require a mistrial.  *Id.*  I agree.  Further, I am persuaded that any prejudice that could have resulted from this comment was sufficiently minimized by the curative instruction.  *Record* vol. IX at 127; *Cummings*, 161 F.3d at 618.

To summarize, Applicant failed to exhaust this claim and is procedurally barred from pursuing it herein.  Even if that were not the case, the Colorado Court of Appeals' decision was not contrary to federal law or objectively unreasonable.  Indeed, the prosecutor's isolated remarks during the closing statement did not amount to a constitutional violation or necessitate a mistrial, and Claim III should be denied.

### 4.  Claim IV:  Cumulative Error

Applicant alleges that the cumulative effect of the errors committed at trial – i.e., the court (1) misinstructing the jury as to the elements of kidnapping, (2) refusing to instruct the jury on the lesser included offense of false imprisonment, and (3) denying Applicant's request for a mistrial due to the prosecutor's remarks in her closing statement – deprived Applicant of his right to due process.  *Application* [#7] at 22.  As a preliminary matter, the Colorado Court of Appeals determined that because no errors had occurred, there could be no cumulative negative effect on the fairness of Applicant's trial.  *Saroyan I*, No. 01CA2017, at 24.  I agree.

The Tenth Circuit has defined the concept of cumulative error as follows:

Cumulative error is present when the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. A cumulative error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of trial is such that collectively they can no longer be determined to be harmless.

*Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003) (citation omitted). The threshold to application of a cumulative error analysis is that errors, although slight in isolation, have occurred. *Moore v. Reynolds* 153 F.3d 1086, 1113 (10th Cir. 1998) ("Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors"). Here, no errors occurred and the Colorado Court of Appeals was justified in rejecting the application of a cumulative error analysis.

Even if Claims I through III individually amounted to harmless error, Applicant would still not be entitled to relief. First, neither Claim I nor Claim II involves potential constitutional errors as is required for habeas relief. *See Estelle*, 502 U.S. at 67-68; *see also Dickson*, 130 Fed. Appx. at 263 ("Federal habeas relief will not lie for errors of state law."). Second, Applicant has failed to articulate how he was prejudiced by the cumulation of any of the errors alleged herein.

To summarize, the Colorado Court of Appeals' decision was not contrary to federal law or objectively unreasonable. Applicant was not entitled to a consideration of whether cumulative error mandated a reversal of his sentence when the court found that no errors had been committed. Further, errors grounded in the violation of state law, but not constitutional law, do not provide the basis for applying a cumulative error analysis to Applicant's case. *See generally Hernandez v. Addison*, 217 Fed. Appx. 817, 820 (10th Cir.

Feb. 22, 2007) (unpublished decision) (refusing to apply cumulative error analysis to errors of state law); *Emmitt v. Snider*, 43 Fed. Appx. 314, 316 (10th Cir. July 30, 2002) (unpublished decision) (refusing to grant right to appeal habeas case based, in part, on allegation that cumulative errors of state law entitled applicant to habeas relief). As such, the Court recommends that Applicant's Claim IV be denied because (1) Applicant failed to exhaust it by raising a federal constitutional challenge or raising it to every state appellate court; and (2) after reviewing the claim on its merits, Applicant has failed to prove that he suffered a constitutional injury.[5]

### III. Conclusion

In reviewing the merits of Applicant's claims, the Court finds that Applicant is not entitled to relief pursuant to 28 U.S.C. § 2254. No evidentiary hearing is required. Accordingly, for the reasons stated above, the Court RECOMMENDS that the Amended Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and that this case be dismissed with prejudice.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

---

[5] Even were to Court to consider Applicant's contention raised for the first time in his Traverse that the failure to exhaust his claims amounted to ineffective assistance of appellate counsel, Applicant is not entitled to relief. The standard for determining whether Applicant's counsel was ineffective is enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). Applicant must show that his counsel's performance was deficient, and that he was prejudiced by it. *Id.* at 688-92; *Trice*, 196 F.3d at 1159-60. "Absent some effect of challenged conduct on the reliability of the . . . process, the Sixth Amendment guarantee is generally not implicated." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Because the Court concludes that Applicant is not entitled to relief regarding any of his claims based upon a review of the merits, even considering the cumulative effect of such claims, he was not prejudiced by the failure of Applicant's counsel to exhaust these claims.

assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: July 2, 2008

<div style="margin-left: 40%;">

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix

</div>